UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

CHRISTOPHER FOUNTAIN,

       Plaintiff,

  -v-                                                                                  No.  13 CV 7016-LTS-FM

CITY OF WHITE PLAINS et al.,

       Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

       Pro se plaintiff Christopher Fountain ("Plaintiff") brings this action against the City of White Plains and Detectives Michael Petrosino, James Tassone, John Heffner, Matthew Kittelstad, George Serrano, Timothy Byrne, Patrick Kirby, Bryan Hembury, and Edward Rutledge, and Sergeants Todd Moskalik and Dennis Doherty (collectively "White Plains Defendants"), as well as against the City of Clarkstown, County of Westchester, County of Rockland, and Rockland County Detectives Robert Shine, Jr. and Lorraine McGrath.[1]  In his Amended Complaint, filed on October 2, 2013, Plaintiff asserts claims pursuant to 42 U.S.C. Sections 1981, 1983, 1985 and 1986, and also asserts New York state law claims of unlawful investigative detention procedures, intentional infliction of emotional distress and civil conspiracy.  In a letter dated April 7, 2015 (docket entry no. 49), which was accompanied by

---

[1] On November 12, 2013, pursuant to 28 U.S.C. Sections 1915A(b) and 1915(e)(2)(B), the Court dismissed Plaintiff's claims against the County of Westchester Law Enforcement Agency and the County of Rockland Law Enforcement Agency from the complaint.  (Docket entry no. 5.)

four affidavits (hereinafter the "April Submission"), Plaintiff proffers additional facts and appears to assert Fifth and Sixth Amendment claims, and requests that sanctions be imposed against the White Plains Defendants for failure to comply with court orders relating to the identification of individual defendants.  (See id. at ECF pages 1-2.)  Plaintiff seeks compensatory damages, in addition to reimbursement of costs incurred as a result of this action.  (Amended Complaint ("Am. Compl.") at 12.)  The Court has jurisdiction of this action purusant to 28 U.S.C. §§ 1331 and 1367.

Before the Court is the motion of the White Plains Defendants to dismiss all of Plaintiff's claims against them, pursuant to Federal Rule of Civil Procedure 12(b)(6).  The White Plains Defendants assert that the claims against Detectives Tassone, Hembury and Rutledge must be dismissed for lack of service, that Plaintiff's remaining federal claims fail as a matter of law, and that the individual defendants are in any event entitled to qualified immunity.  In addressing the additional issues raised in Plaintiff's April Submission, the White Plains Defendants argue that Plaintiff's request for sanctions must be denied because the Court has already ruled that they have complied with the Court's orders and that Plaintiff fails to assert a viable claim under the Fifth or Sixth Amendment.  The Court has considered thoroughly all of the parties' submissions and arguments.  For the reasons stated below, the White Plains Defendants' motion to dismiss the Amended Complaint is granted and Plaintiff's request for sanctions is denied.

## BACKGROUND

The following facts, alleged in the Amended Complaint and/or proffered in Plaintiff's April Submission, are taken as true for the purposes of this motion practice.  Plaintiff

alleges that he and his cousin, Phillip Fountain, were passengers in a vehicle driven by Plaintiff's mother Yvonne Williams (a.k.a. Yvonne Fountain) on December 8, 2010. (Am. Compl. at ¶ 17.) At approximately 5:00 p.m., as they pulled up to Ms. Williams' home located in Mount Vernon, New York, they encountered a red minivan that was blocking the driveway. (Id. at ¶ 18.) Ms. Williams honked the horn twice, and thereafter the red minivan moved to allow Ms. Williams' car to proceed into the driveway of the home. (Id. at ¶ 19.) Plaintiff then entered the home, and called a taxi to pick him up and take him to the home of Jasmine Sanabria (with whom Plaintiff shares two daughters) in order to pick up one of his daughters by 6:00 p.m. as they had earlier planned. (Id. at ¶ 20.)

When the taxi arrived shortly thereafter, Plaintiff exited his mother's residence and entered the taxi through the rear passenger door and confirmed his destination with the taxi driver. (Id. at ¶ 21.) Detectives Petrosino, Tassone, Heffner, Kittelstad, and Serrano, and Sergeant Moskalik, then approached the taxi wearing plain clothing and brandishing weapons, shouting at Plaintiff to "[g]et the fuck out [of] the vehicle!" (Id. at ¶ 23.) Plaintiff was then pulled out of the taxi and forced to place his hands on the rear trunk area while Sergeant Moskalik screamed "[d]on't fuckin[g] move, keep your fuckin[g] hands on the hood!" (Id. at ¶ 24.) Plaintiff was then searched, placed in handcuffs and taken to the White Plains Police Department ("WPPD") by Detectives Heffner and Kittelstad. (Id. at ¶¶ 25, 26.)

After arriving at the WPPD, Plaintiff was brought into an interrogation room by Detectives Byrne and Kittelstad, where his personal property was vouchered and a second body search was conducted. (Id. at ¶ 28.) In the Amended Complaint, Plaintiff alleges that he was then subjected to "hostile and coercive" interrogation by Detectives Hembury and Kirby until Plaintiff demanded an attorney. (Id. at ¶ 29.) There is some ambiguity in Plaintiff's allegations

with respect to whether the interrogation ceased upon Plaintiff's request for an attorney.[2] The "coercive" and "hostile" interrogation methods included Detective Hembury shouting at him to "stop fucking around and tell [him] the truth . . . ." (Id. at ¶ 31), and threats to arrest Ms. Sanabria and Plaintiff's grandfather, George D'arbeau, for involvement in a White Plains robbery and/or the planning thereof. (Id. at ¶ 30; April Submission at ECF page 4.) Detective Byrne threatened that Plaintiff's children would be taken by the state should Ms. Sanabria be arrested. (Am. Compl. at ¶ 32.) According to the April Submission, Plaintiff was then told by a Detective "Bryan"[3] to sign the Miranda waiver so that "we [could] talk and then [Plaintiff] could leave." (See April Submission at ECF page 4.)

Plaintiff signed the Miranda waiver and was thereafter taken from the interrogation room and placed in a holding cell by Detective Rutledge, where he remained for twenty-one and one-half hours without a phone call, shower or being fingerprinted. (Am. Compl. at ¶ 33.) Some of his clothing was taken away, and Plaintiff was left with "only a thin sweater, [] pants and socks." (April Submission at ECF page 4.) Plaintiff then alleges that he was removed from the cell and escorted by Detective Byrne back to the interrogation room on Thursday, December 9, the following day. (Am. Compl. at ¶ 34.) Once inside the interrogation room, Rockland County Detectives Lorraine McGrath and Robert Shine, Jr. ("Rockland County

---

[2]  Compare Am. Compl. at ¶ 29 ("Plaintiff was then subjected to over two hours of hostile and coercive interrogation until demanding an attorney . . ."), with April Submission at ECF page 4 ("After a few questions, I ask[ed] for the first time to call a lawyer . . . . [a]fter many threats and sometime after my first request for a lawyer, they stopped the interrogation . . . .").

[3]  Detective "Bryan" is not named elsewhere in the Amended Complaint, nor is it indicated elsewhere in the docket that an individual by that name was served or is otherwise a party to this complaint. It may be that Plaintiff meant to refer to Detective Bryne or to Detective Bryan Hembury.

Detectives")[4] entered and continued "hostile and coercive" interrogation methods, and Detective McGrath repeated threats that Plaintiff's children would be taken by the state if Ms. Sanabria was arrested.  (Id. at ¶ 36.)  Plaintiff made additional requests for an attorney, which were denied, and, after the Rockland County Detectives asked Plaintiff about "other robberies in different areas," Plaintiff "told them about the whole crime."  (April Submission at ECF page 5.)  Allegedly prompted by the repeated threats to arrest Ms. Sanabria and while "under duress," Plaintiff told the detectives where the money from the robberies was being held (id.; Am. Compl. at ¶ 38), and thereafter signed a statement prepared by Detective Shine that "explained a series of events regarding a robbery,"  (Am. Compl. at ¶ 38.)  Plaintiff was formally arrested on Friday, December 10, 2010.  (Id. at ¶ 39.)

Copies of the court records proffered by the White Plains Defendants, the authenticity of which Plaintiff does not dispute, show that Plaintiff was subsequently convicted of the crimes for which he had been arrested.  (See Defs.' Ex. D, Ex. E.)[5]  Plaintiff was convicted by a jury on September 26, 2011, of robbery in the first degree and two counts of criminal use of a firearm in the first degree, in connection with the Rockland County robbery charges.  (See Defs.' Ex. D.)  He pleaded guilty on February 21, 2012, to robbery in the first degree in connection with the Westchester County robberies.  (See Defs.' Ex. E.)

Plaintiff commenced this action on October 2, 2013, naming the City of Mount Vernon, City of White Plains, City of New City, County of Westchester, County of Rockland

---

[4]  The Rockland County defendants are represented by separate counsel and are not parties to the motion to dismiss.

[5]  For discussion of the propriety of the Court's consideration of exhibits submitted by the White Plains Defendants in support of their motion to dismiss, see infra pp. 7-8.

and sixteen "John Does" as defendants. On November 12, 2013, this Court issued an Order of Service requiring Corporation Counsel for the municipal defendants to ascertain the John Doe defendants' identities, address where they might be served and provide that information to the Court and Plaintiff. (Docket entry no. 5.) The White Plains Defendants supplied that information and, on August 27, 2014, Magistrate Judge Frank Maas directed the Plaintiff to submit his amended complaint naming the defendants to the Pro Se Office by October 3, 2014. (Docket entry no. 19.) Plaintiff filed his Amended Complaint on September 23, 2014. The White Plains Defendants filed the instant motion to dismiss the Amended Complaint on February 11, 2015. Plaintiff failed to file timely opposition papers but later filed the April Submission.

## DISCUSSION

To survive a motion pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotations omitted). The Court must give particular latitude to complaints prepared by pro se plaintiffs, which are held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Pro se complaints should be interpreted "to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) (citation omitted). Further, trial courts are directed "to allow amendment of pro se complaints fairly freely." Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Holmes v. Goldin, 615 F.2d 83, 85 (2d Cir. 1980)). While courts are to read a pro se complaint liberally, the complaint must still plead "enough facts to state a claim to relief that is

plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007).

Procedural Issues

In a declaration accompanying their motion to dismiss, the White Plains Defendants proffered several exhibits for the Court's consideration. Exhibit A consists of police reports and statements prepared in connection with Plaintiff's arrest; Exhibit B is a copy of the Amended Complaint; Exhibit C is a copy of the Miranda waiver signed by Plaintiff during his interrogation in connection with the December 8, 2010, arrest; and Exhibits D and E are the Sentence and Commitment forms relating to Plaintiff's convictions. Defendants have not requested that the Court convert their motion into one for summary judgment pursuant to Federal Rule of Civil Procedure 56, and the Court declines to do so sua sponte. Accordingly, the Court considers whether the proffered exhibits may be taken into account in determining the motion pursuant to Rule 12(b)(6).

Where a plaintiff has actual notice of the information contained in extraneous documents and has relied on the documents in drafting the complaint, a court may consider the document on a motion to dismiss. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). A court may also consider official court or public records. See Magnotta v. Putnam Cnty. Sheriff, No. 13-CV-2752, 2014 WL 705281, at *3 (S.D.N.Y. Feb. 24, 2014) (citations omitted). When the authenticity of such documents is not contested, the Court may "take judicial notice of them in deciding [a] motion[] to dismiss." Id. (citing case law taking judicial notice of an individual's guilty plea or conviction as indisputable and a matter of public record). Accordingly, for the purposes of resolving the instant motion, the Court finds it appropriate to consider exhibits C, D and E, since the Plaintiff has referenced the Miranda waiver in his

complaint and his subsequent convictions are matters of public record of which Plaintiff was aware when drafting his complaint.

Plaintiffs' April Submission includes affidavits regarding the arrest from himself, his aunt Cassandra Fountain and his cousin Phillip Fountain.  In it, Plaintiff refers to an alleged Sixth Amendment violation, a passage that Defendants construe as asserting a Fifth Amendment claim.  While White Plains Defendants argue that Plaintiff's April Submission is untimely and should not be considered, given the latitude that must be afforded to pro se plaintiffs, the Court exercises its discretion to consider the submission as a response to Defendants' motion to dismiss, and has taken Plaintiff's additional factual proffers and references to additional causes of action into account in assessing the sufficiency of the Amended Complaint.

Service of Process on Defendants Tassone and Rutledge[6]

The White Plains Defendants move to dismiss all claims as against Defendants Tassone and Rutledge for lack of service, arguing that service was never executed as to those defendants.  "Federal Rule of Civil Procedure 4(m) provides that actions are subject to dismissal without prejudice unless service is made within 120 days." Zapata v. City of New York, 502 F.3d 192, 194 (2d Cir. 2007).  However, "district courts have discretion to grant extensions [under FRCP 4(m)] even in the absence of good cause." Id. at 196.  Moreover, the Court "must make reasonable allowances so that a pro se plaintiff does not forfeit rights by virtue of [his] lack of legal training." Ahern v. Neve, 285 F. Supp. 2d 317, 320 (E.D.N.Y. 2003) (citing Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983)).

---

[6] The White Plains Defendants have withdrawn their contention that Plaintiff's Amended Complaint should be dismissed as to Detective Hembury for insufficient service of process.  (See docket entry no. 45.)

The docket shows that service was made upon Tassone on December 23, 2014, within 120 days of the filing date of Amended Complaint on September 23, 2014.  (See docket entry no. 35.)   The White Plains Defendants, in their Reply Memorandum, concede that Detective Rutledge has received a request to acknowledge service since the filing of their initial memorandum in support of their motion to dismiss.  (See Defs.' Reply Mem. Law Supp. Mot. Dismiss at 1 n.1.)  In addition, the Court notes that a summons for Rutledge was issued on November 7, 2014, and a failed attempt to serve Rutledge was made on December 22, 2014.[7] (See docket entry no. 33.)  Thus, the Court is satisfied that Tassone was timely served, and that Plaintiff acted in good faith in attempting to serve Rutledge within the 120 day post-filing period.  The Court denies the White Plains Defendants' dismissal motion to the extent it is premised on lack of service.

Section 1983 Claims

Defendants move to dismiss Plaintiff's Fourth, Fifth, Sixth and Fourteenth Amendment claims, arguing that each fails as a matter of law.  "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws."  Blessing v. Freestone, 520 U.S. 329, 340 (1997) (internal citation and quotation marks omitted).  The Court therefore considers whether Plaintiff has alleged facts sufficient to plead plausibly his constitutional violation claims.

---

[7]   Detective Rutledge appeared in the action on February 11, 2015.  The White Plains Defendants filed the instant motion to dismiss, which Rutledge joined, on the same date.  (Docket entry no. 41.)

1.     Fourth Amendment Claim for False Arrest

Defendants move to dismiss Plaintiff's Fourth Amendment claim for false arrest, arguing that Plaintiff's subsequent convictions of the crimes for which he was arrested establish that the White Plains Defendants had probable cause, thus precluding any viable claim for false arrest. In the Amended Complaint, Plaintiff alleges that he was illegally arrested and imprisoned by the White Plains Defendants. (See Am. Compl. at ¶¶ 41, 43, 48, 49.) Specifically, Plaintiff asserts that he was arrested and detained, against his will, without a warrant and without probable cause.

Common law false arrest is cognizable under Section 1983 if it encompasses a violation of the Fourth Amendment. See Lennon v. Miller, 66 F.3d 416, 423 (2d Cir. 1995). "A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law," see Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996), and in analyzing a Section 1983 claim for false arrest, courts in the Second Circuit look to the law of the state where the arrest occurred, see Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Under New York law, a plaintiff must show that: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted). Probable cause is a complete defense to false arrest claims under state law and Section 1983. See Weyant, 101 F.3d at 852 (citations omitted). "[E]vidence of a subsequent arraignment or indictment is admissible as some proof of the presence of probable cause. Moreover, a conviction which survives appeal would be conclusive evidence of probable cause." Broughton v. State, 335 N.E.2d 310, 315 (N.Y. 1975); see also Wims v. New York City Police Dep't., No. 10-CV-6128, 2011 WL 2946369, at *3 (S.D.N.Y. Jul. 20, 2011)

(holding that the plaintiff's Section 1983 false arrest claim failed because plaintiff pleaded guilty to one of the crimes for which he was arrested).

Defendants have proffered court documentation of Plaintiff's convictions in Westchester County for the White Plains robberies and in Rockland County for the robberies in that location. (See Defs.' Ex. D, Ex. E.) Plaintiff pleaded guilty to the Westchester County robberies, and has not proffered any statements or other evidence suggesting that his convictions are on appeal or have been overturned. See Wims, 2011 WL 2946369, at *3 (granting motion to dismiss false arrest claims because plaintiff failed to show that his conviction following arrest "had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.") (quoting Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)). Therefore, Plaintiff's federal and state law claims for false arrest must fail, because his subsequent convictions establish that the White Plains Defendants had probable cause to arrest him.

2.  Fifth and Sixth Amendment Claims

In his April Submission, Plaintiff asserts a Sixth Amendment violation claim in connection with his requests for counsel during his interrogation. (See April Submission at ECF page 1) ("Collectively, [defendants] . . . violated my civil rights . . . according to the fourth, sixth and fourteenth amendment[s] . . .") (emphasis added). Defendants move to dismiss any Sixth Amendment claims raised by Plaintiff in the April Submission. Their motion is granted with respect to these new claims, because the Sixth Amendment right to counsel does not attach until a prosecution is commenced by way of a formal charge, preliminary hearing, indictment, information, or arraignment. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (citations

omitted); see also Texas v. Cobb, 532 U.S. 162, 168 (2001) (Sixth Amendment right attaches only to charged offenses).  Here, Plaintiff's Amended Complaint and April Submission contain facts that only pertain to police conduct before Plaintiff was formally charged with the crime for which he was taken into custody.  Because the Sixth Amendment only guarantees the right to counsel after formal proceedings have begun against a suspect, Plaintiff has not stated any viable claims for violations of the Sixth Amendment, and his Sixth Amendment claims must therefore be dismissed.

Although Plaintiff does not explicitly assert Fifth Amendment claims, the Court will, in light of Plaintiff's pro se status, construe the April Submission liberally and address the Fifth Amendment claims implied by Plaintiff's allegation that he was subjected to further interrogation following his initial request for an attorney.  The White Plains Defendants contend that those claims must fail because the relief sought cannot be granted by this Court in the context of this litigation.  (See Defs.' Mem. Law Supp. Mot. Dismiss at 6-7.)

The Fifth Amendment "guarantee[s] that [n]o person . . . shall be compelled in any criminal case to be a witness against himself."  See McNeil, 501 U.S. at 176 (internal quotation marks omitted).  To protect this right, the Supreme Court, in Miranda v. Arizona, 384 U.S. 436 (1966), adopted a set of "prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination."  J.D.B. v. N. Carolina, 131 S. Ct. 2394, 2401 (2011).  It is well established that one of those measures is a right to counsel and that, once a suspect under custodial interrogation asserts this right, "not only must the current interrogation cease, but he may not be approached for further interrogation until counsel has been made available to him. . . . If the police do subsequently initiate an encounter in the absence of counsel . . . the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial .

. . ." McNeil, 501 U.S. at 176-77 (internal quotation marks and citations omitted).  While a defendant may waive these rights, "any waiver ha[s] to be made knowingly and intelligently." New York v. Quarles, 467 U.S. 649, 662 (1984) (internal quotation marks and citation omitted). "The remedy for a Miranda violation is the exclusion from evidence of any ensuing self-incriminating statements."  Neighbour v. Covert, 68 F.3d 1508, 1510 (2d Cir. 1995) (citation omitted).  While Plaintiff alleges facts indicating that he may have been subjected to questioning despite his request for an attorney, and that the waiver he signed may not have been wholly voluntary, the instant motion is an inappropriate vehicle for relief relating to such Miranda violations.  Although such violations could warrant the exclusion of incriminating statements from evidence in a criminal trial on the relevant charges, they do not, standing alone, support a viable cause of action for damages under Section 1983.  Id. at 1510-11.  Therefore, any Fifth Amendment claims that Plaintiff asserts in his Amended Complaint and/or April Submission are dismissed for failure to state a claim upon which relief may be granted.

    3.    Fourteenth Amendment Claims for Coercive Interrogation

Defendants move to dismiss Plaintiff's Fourteenth Amendment claim for coercive interrogation.  "The due process clause of the Fourteenth Amendment prohibits self-incrimination based on fear, torture, or any other type of coercion.  The question in each case is whether the conduct of law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined."  Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 348 (2d Cir. 1998) (internal quotations marks and citations omitted).  The conduct challenged must rise to a level of "misbehavior that so shocks the sensibilities of civilized society as to warrant a federal intrusion into the criminal processes of the States."  Id. Further, "investigatory conduct that includes coercive techniques does not offend substantive

due process absent particularly egregious circumstances." Chavez v. Martinez, 538 U.S. 760, 773 (1994). Interrogation methods egregious enough to sustain a due process violation have been described as those "so brutal and so offensive to human dignity" that they "shoc[k] the conscience." Id. at 774 (citing Rochin v. California, 342 U.S. 165, 172, 174 (1956) (overturning conviction based on evidence obtained by involuntary stomach pumping)); see also Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 249 (2d Cir. 2001) (denying qualified immunity to public school teacher who, inter alia, dragged, choked, punched and slammed middle-school student against the bleachers and a metal fuse box, and who had assaulted students on four other prior occasions). Defendants argue that the individual defendants' alleged conduct did not constitute conscience shocking behavior and that, even if it did, they are entitled to qualified immunity. (See Defs.' Mem. Law Supp. Mot. Dismiss at 9-16.)

    Qualified immunity analysis is a two-step inquiry, involving determinations as to whether the facts alleged by the plaintiff make out a violation of a constitutional right and, if so, whether that right was clearly established at the time of the violation. See Pearson v. Callahan, 555 U.S. 223, 232 (2009). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (internal quotation marks and citations omitted). "Qualified immunity operates 'to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful.'" Id. (citation omitted). District courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand" and may decide the case on the basis of the second prong only. See id. at 236, 239.

    Plaintiff alleges that his Fourteenth Amendment rights were violated by "hostile"

and "coercive" investigative detention procedures conducted by the White Plains Defendants, including threats to arrest the mother of Plaintiff's children and his grandfather, the shouting of expletives at Plaintiff and the detention of Plaintiff in a cell for over twenty-one hours.  (See Am. Compl. at ¶¶ 29-32.)  Plaintiff alleges that, had he not felt threatened, he would not have signed the statement prepared by Detective Shine admitting to the robberies.  (See id. at ¶¶ 37-38 ("Following repeated threats that Ms. Sanabria and Mr. D'arbeau [would] be arrested and detained . . . Plaintiff stated 'I'll agree and do whatever you want as long as my family is not harassed.'")).  The White Plains Defendants argue that their conduct did not rise to the "conscience- shocking" level necessary to establish a claim under the Fourteenth Amendment for coercive interrogation.  (See Defs.' Mem. Law Supp. Mot. Dismiss at 12.)  The White Plains Defendants further argue that, even if their conduct did rise to such a level, they are entitled to qualified immunity because they were not on notice that their conduct violated Plaintiff's constitutional rights.  (See id. at 14.)

Conduct similar to that alleged by Plaintiff has been found insufficiently egregious to meet the high bar of a Fourteenth Amendment due process violation.  See, e.g., Moran v. Burbine, 475 U.S. 412 (1986) (police officers' failure to notify a suspect of counsel retained by his sister and eliciting a confession in the absence of his counsel "[fell] short of the kind of misbehavior that so shocks the sensibilities"); Tinker v. Beasley, 429 F.3d 1324 (11th Cir. 2005) (police misconduct was "untoward and upsetting, and yet [did] not rise to a level that shocks the conscience" under the Fourteenth Amendment where police questioned the plaintiff repeatedly over four days of incarceration in the absence of the plaintiff's assigned counsel and threatened that the plaintiff would never see her children again if she did not confess).  Here, the Plaintiff principally alleges that he was threatened with the arrest of the mother of Plaintiff's

children and his grandfather, held in a cell for over twenty-one hours, and interrogated despite having requested an attorney. (See Am. Compl. at ¶ 29-32.) The conduct at issue, while it might also be characterized as "untoward and upsetting," is at least arguably less egregious than, and at most on par with, the type of the conduct alleged in Tinker and, for similar reasons, does not rise to a level that shocks the conscience.

Even if the conduct here could be found sufficiently conscience shocking to violate the Constitution, a reasonable official would not have understood on the basis of the case law at the time of the incident that the conduct violated a clearly established constitutional right. See Pearson, 555 U.S. at 232. Defendants are thus entitled to qualified immunity.

Section 1981 Claims

Defendants also move to dismiss Plaintiff's Section 1981 claims,[8] arguing that he fails to make any factual allegations with respect to their intent to discriminate. (Defs.' Mem. Law Supp. Mot. Dismiss at 19.) "To establish a claim under 42 U.S.C. § 1981, plaintiffs must allege facts supporting the following elements: (1) plaintiffs are members of a racial minority; (2) defendants' intent to discriminate on the basis of race; and (3) discrimination concerning one of the statute's enumerated activities," including "the right to the full and equal benefit of all laws and proceedings for the security of persons and property." Brown v. City of Oneonta, 221 F.3d 329, 339 (2d Cir. 2000). Both the Amended Complaint and the April Submission fail to

---

[8] Construed liberally, the Amended Complaint asserts a Section 1981 claim against the White Plains Defendants. (See Am. Compl. at ¶ 54) (alleging that defendants denied Plaintiff "same state and federal procedural rights in every [s]tate and [t]erritory to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens").

allege facts indicating that Plaintiff was treated differently based on his race. Plaintiff only makes a conclusory allegation that the defendants denied him "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens," and that he is a member of a racial minority group, and does not allege any facts indicating discrimination or disparate treatment on the basis of race. (See Am. Compl. ¶¶ 4, 54.) Plaintiff's Section 1981 claims against the White Plains Defendants are therefore dismissed.

Section 1983 Monell Liability, and Conspiracy Claims under 42 U.S.C. Sections 1985 and 1986

      White Plains Defendants move to dismiss Plaintiff's Monell municipal liability claims against the City of White Plains and his conspiracy claims under Sections 1985 and 1986 claims, arguing that Plaintiff has failed to state any claims for constitutional violations upon which relief under Monell and Sections 1985 and 1986 could be predicated. (See Defs.' Mem. Law Supp. Mot. Dismiss at 20-23.) A plaintiff asserting a Section 1983 claim against a county or municipality must demonstrate that the harm he suffered was a result of official municipal policy, custom or practice. Monell v. Dep't of Social Servs., 436 U.S. 659, 692-94 (1978). Plaintiff alleges that the City of White Plains is responsible for his injuries under the doctrine of municipal liability because it was "the policy and/or custom of [the City of White Plains] to inadequately and improperly investigate citizen complaints of [p]olice misconduct, and acts of misconduct were instead tolerated by [the City]." (See Am. Compl. at ¶ 55-60.) "[A]n actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's 'policy or custom.'" Pinaud v. Cty. of Suffolk, 52 F.3d 1139, 1157 (2d Cir. 1995) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)). Plaintiff's allegation of a custom or policy is entirely conclusory, and he alleges no facts connecting the supposed policy of failure to investigate to the

constitutional violations he claims to have suffered. Furthermore, as explained above, Plaintiff has failed to allege facts sufficient to support any viable claim that his constitutional rights were violated. His Monell claim against White Plains is therefore dismissed.

Plaintiff also alleges that the White Plains Defendants conspired to "[f]alsely [a]rrest, [u]nlawfully [i]mprison, [a]nd [c]onduct [i]nvestigative [d]etention [p]rocedures." (Am. Compl. at ¶¶ 50-54.) "[42 U.S.C. § 1985] creates no substantive rights but, instead, provides a remedy for the deprivation of rights guaranteed by the United States Constitution." Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 389 (E.D.N.Y. 2000) (citing Great Am. Fed. Sav. & Loan v. Novotny, 442 U.S. 366, 372 (1999)); Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d 584, 586-87 (2d Cir. 1988)). Because Plaintiff has failed to assert any viable constitutional claim, his Section 1985 claim cannot stand. Furthermore, a Section 1986 claim only provides a cause of action against anyone with the power to prevent a Section 1985 violation who fails to do so, and "must be predicated upon a valid [Section] 1985 claim." Mian v. Donaldson, Lufkin & Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). In the absence of any viable Section 1985 claim, Plaintiff's Section 1986 claims must also be dismissed.

Sanctions Request

In Plaintiff's April Submission, he requests that sanctions be imposed against the White Plains Defendants for failing to provide "the full names and addresses of defendants." (April Submission, ECF pages 1-2). The Court has previously determined that the White Plains Defendants have satisfied their disclosure obligations (see docket entry nos. 5, 19, 43, 44). The request for sanctions is therefore denied.

CONCLUSION

For the foregoing reasons, Plaintiff's federal claims against the White Plains Defendants, and his state law false arrest claims, are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against the White Plains Defendants. See Langer v. Town of Trumball, 34 F. App'x 816, 817 (2d Cir. 2002) ("Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline jurisdiction over pendent state law claims when all the claims conferring federal jurisdiction have been dismissed.")

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. Accordingly, any application to proceed on appeal in forma pauperis with respect to the claims addressed in this Order is denied. See Coppedge v. United States, 369 U.S. 438, 444 (1962).

This Memorandum Opinion and Order resolves docket entry number 38.

SO ORDERED.

Dated: New York, New York
September 23, 2015

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

A copy of this order has been mailed to:

Christopher Fountain
DIN # 11-A-3703
Upstate Correctional Facility
P.O. Box 2000
309 Barehill Road
Malone, NY 12953